## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DIANNE BUCCERI, JANET CHARAK, and LISA SANDERS, on behalf of themselves and all other similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. 1:15-CV-13955 |
| v. | ) ) | |
| CUMBERLAND FARMS, INC. | ) ) | |
| Defendant. | ) ) | |

## PLAINTIFFS' UNOPPOSED MOTION TO APPROVE THE PARTIES' FAIR LABOR STANDARDS ACT SETTLEMENT

Plaintiffs, by and through their counsel, hereby move this Court for an Order granting their Unopposed Motion to Approve the Parties' Fair Labor Standards Act Settlement ("Motion").

## INTRODUCTION

After nearly five years of hard-fought litigation and on the brink of trial, the parties have agreed to settle this lawsuit. *See* Exhibit A (Settlement Agreement) to Declaration of Michael Palitz In Support of Motion ("Palitz Decl."), filed herewith. The settlement resolves the unpaid wage claims of Plaintiffs and all Opt-In Plaintiffs (together, "Plaintiffs")[1] who worked for Defendant as Legacy Store Managers during the Settlement Period (three years from the date each Plaintiff filed their consent to join the lawsuit until January 28, 2020). This settlement is a fair and reasonable resolution of the Plaintiffs' highly-disputed claims.

---

[1] This settlement also includes the settlement of the claims of Nouman Ali, who worked as a Store Manager for Defendant and retained Plaintiffs' counsel after the notice period closed in this case. The parties agreed to resolve his claim in connection with this settlement for the same relief as other Store Manager Plaintiffs.

This case concerned a contentious dispute over whether or not Plaintiffs (who worked as Store Managers) were exempt from the overtime requirements of the Fair Labor Standards Act. After completing full merits discovery as to seven of the 108 Plaintiffs, the Court addressed Defendant's summary judgment motion as to the executive exemption, finding that Defendant satisfied two of the four executive exemption elements and that trial would be necessary to resolve the remaining elements.  Doc. 250.  While Plaintiffs contend that they were wrongly classified as exempt from the overtime protections under the FLSA, Defendant presented evidence in its summary judgment motion, which a jury could rely on to find otherwise and leave Plaintiffs ineligible for overtime pay.  Because the downside of an unsuccessful outcome at trial was great for both parties, this settlement allows the parties to reach a fair resolution without the high risks and continued costs of litigation.  Moreover, this settlement is favorable because the trial on the first seven Plaintiffs' claims would not bind the remaining 101 Plaintiffs.  No matter the outcome of the first trial, there was substantial litigation ahead for the Court and the parties to resolve the claims of the remaining 101 Plaintiffs, including depositions, discovery requests and responses, document production, including electronic discovery searches and production, discovery motion practice, summary judgment briefing, and more trials.  In all likelihood, absent settlement, this case would have lasted five or more years until all of the claims were tried and the appeals of these trials were resolved.  This settlement provides significant monetary relief to all Plaintiffs now and conserves the parties' and the Court's resources.

For the reasons set forth herein, Plaintiffs and their counsel submit that this settlement is a fair and reasonable resolution of the disputed-wage claims, and respectfully request that the Court approve this settlement.  Defendant does not oppose this motion and supports approval of the settlement.

2

**FACTUAL BACKGROUND**

In the summer of 2015, Plaintiffs' Counsel began investigating Plaintiffs' claims that they were misclassified as exempt while working as Store Managers in Defendant's Legacy stores. Palitz Decl. at ¶ 5.  Plaintiffs' Counsel conducted an in-depth investigation into Defendant's compensation practices, which included, among other things, communicating with Store Managers who worked in different locations throughout the country to learn about their job duties, hours worked, and other aspects of their jobs, reviewing Defendant's operational and compensation practices, and researching the executive and administrative exemptions to the Fair Labor Standards Act ("FLSA") and considering whether Store Managers' duties fit within these exemptions.  *Id*. Plaintiffs' Counsel contacted Defendant about these claims to attempt to engage in a pre-suit settlement dialogue.  *Id*.  However, Defendant maintained that it believed it correctly classified Legacy Store Managers as exempt from the FLSA.  *Id*.  Accordingly, Plaintiffs filed this lawsuit on November 25, 2015.  Doc. 1.

After Defendant answered, the parties addressed whether or not the Court would authorize notice of this lawsuit to the putative FLSA collective action members.  *Id*. at ¶ 6.  Plaintiffs prepared their motion for conditional certification and obtained evidence to support the motion. *Id*.  The parties appeared before this Court on February 24, 2016 and discussed conditional certification and the applicable notice standard.  The parties thereafter submitted their competing positions in briefs.  Docs. 37, 38.  Thereafter, the parties conferred and reached a stipulation on conditional certification that provided for notice of this lawsuit to be sent to other Legacy Store Managers, but Defendant reserved the right to seek decertification of the conditionally certified collective at the appropriate time (Doc. 40).  *Id*. ¶ 7.  The parties also negotiated the content of the notice and the notice process.  *Id*.  Following Court approval of that stipulation, the parties

disagreed as to the interpretation of the stipulation and Plaintiffs filed a motion for clarification addressing the content of the notice. Doc. 50. After the Court resolved the notice content issues, Plaintiffs' Counsel hired an experienced claims administrator to mail notice of this lawsuit to the Legacy Store Managers. *Id*. Ultimately, 108 Plaintiffs joined the three Named Plaintiffs in the collective action for a total of 111 Plaintiffs. *Id*. Three Plaintiffs were dismissed from the case, resulting in a total of 108 Plaintiffs (with the addition of Nouman Ali, a total of 109 Plaintiffs are subject to the settlement agreement).[2]

The parties then disputed whether Defendant could obtain discovery from all Plaintiffs or, instead, limit the discovery to a representative sample of the Plaintiffs. *Id*. at ¶ 8. The parties briefed that issue for the Court (Docs. 66, 76), and the Court held oral argument on this issue and decided that the parties would need to provide certain information and documents relating to all Plaintiffs (Doc. 84). Given the large number of Plaintiffs who joined the case, Plaintiffs' Counsel spent substantial time conferring with all Plaintiffs, obtaining the required information and documents, and producing documents to Defendant. *Id.*

The parties continued to dispute the scope of discovery and how many Plaintiffs would need to participate in discovery. *Id*. at ¶ 9. The parties filed additional briefs on this issue (Docs. 100, 102); and on January 26, 2017, the parties appeared before the Court to address the scope of discovery again. The Court ordered the parties to submit additional briefing as to how to efficiently resolve the liability issues in this case. Doc. 108. The parties submitted their competing briefing addressing competing plans for resolving liability and appeared before the Court to address this

---

[2] One Plaintiff, Ellen Hicks, withdrew her filed consent to join. Doc. 65. The consent to join form for Mark Anthony Turner was stricken because it was determined that Cumberland Farms did not employ him as a Legacy Store Manager. Doc. 93. In addition, the consent to join form for Jennie Senac was dismissed for her failure to participate in discovery as Ordered by the Court. Doc. 179.

matter on February 14, 2017.  Docs. 112, 113.  The Court resolved the discovery dispute and ordered further discovery to proceed as to a group of Plaintiffs who became known as the "Phase I Plaintiffs."  Doc. 115.

The parties served comprehensive written discovery related to the policies, practices, and procedures of Defendant and the work history, compensation, and job duties of the Phase I Plaintiffs.  *Id*. at ¶ 10.  The parties conferred frequently about discovery issues and document productions, including extensive negotiations over ESI.  *Id*.  Defendant produced more than 113,000 pages of documents in this case, which Plaintiffs' counsel reviewed.  *Id*.  The parties took 17 depositions: which included seven Phase I Plaintiffs, six Area Sales Managers, and four corporate representative depositions.  *Id*.  These depositions (which took place at locations from Maine to Florida) covered topics such as the Legacy Store Managers' job duties and hours worked, Defendant's policies and procedures relating to compensation, timekeeping, operations, and merchandising, Defendant's affirmative defenses as to exemption issues and good faith, and whether or not Defendant willfully violated the law. *Id*.  Plaintiffs also moved to compel certain documents relating to Store Manager training, electronic discovery, and a time study conducted by Defendant.  Docs. 149-151.

Once discovery was completed, the parties filed competing motions for summary judgment.  *Id*. at ¶ 11.  The parties thoroughly briefed the FLSA executive exemption, the primary duty regulation, the good faith affirmative defense, the methodology used to calculate damages, and the extensive factual record in this case.  Highlighting the magnitude of the discovery and evidence obtained by the parties, each side submitted approximately 100 exhibits in connection with their summary judgment motions.  *Id*.  The parties also briefed multiple motions to strike. Docs. 225, 227.

On November 19, 2018, the Court held oral argument on the summary judgment motions and motions to strike, and the parties argued these motions for several hours addressing all of the issues. *Id*. at ¶ 12; Docs. 181, 202, 221, 230, 236. On July 18, 2019, the Court issued an Order addressing the summary judgment motions. Doc. 250. Following that Order, the parties prepared for trial on the two elements of the FLSA executive exemption which remained at issue for the seven Phase I Plaintiffs – the primary duty and the hire and fire prongs, *see* 29 C.F.R. § 541.100 – and the question of willfulness of the Defendant. Because the trial was limited to these issues for the Phase I Plaintiffs only, the outcome likely would not have impacted any other Plaintiff and would not have addressed damages for the Phase I Plaintiffs, if any, including Defendant's good faith defense.

At the January 14, 2020 pre-trial conference, the parties and the Court discussed the trial and the pre-trial deadlines for the parties' submissions. *Id*. at ¶ 13. In months leading up to the pre-trial conference, the parties began to prepare for a three-week trial set to begin on March 2, 2020. *Id*. Counsel prepared trial witness and exhibit lists, jury instructions, voir dire, and witness outlines, and had begun preparing witnesses for trial. *Id*. However, just before the pre-trial conference, the parties discussed trying to resolve this case through mediation, and addressed the same with the Court during the pre-trial conference. *Id*.

On January 27, 2020, the parties met in Boston to mediate with an experienced employment law mediator, D. Charles Stohler, Esq. *Id*. at ¶ 14. Prior to the mediation, the parties submitted comprehensive mediation statements setting forth their positions as to liability and damages. *Id*. The parties met at 9:00 a.m. on January 27, 2020 and mediated until about 3:30 a.m. on January 28, 2020. *Id*. The parties did not reach an agreement during this time, but agreed to continue discussing settlement with the assistance of Mr. Stohler. *Id*. On January 29, 2020, the parties

agreed to terms of a settlement and entered into the fully executed settlement agreement on April 1, 2020.

As the foregoing summary demonstrates, this litigation involves strongly disputed FLSA claims and required extensive work from the parties over a five-year period. The settlement of this hard-fought litigation could not have been achieved without the assistance of an experienced independent mediator.

## THE SETTLEMENT'S TERMS

### I.    Settlement Payments

This settlement resolves Plaintiffs' claims that Defendant violated the law by not paying them overtime wages. Defendant will pay $430,000.00 to resolve Plaintiffs' claims. From this $430,000.00 payment, the Plaintiffs seek to allocate $18,000.00 as service payments ($2,000.00 each) to Dianne Bucceri, Janet Charak, Lisa Sanders, Robert Herrick, Michael Jalbert, Stephanie Burdick, Chad Lacasse, Anthony Marquette, and Gregory Mitchell (the "Service Award Recipients"). The Service Award Recipients are the Named Plaintiffs and Phase I Plaintiffs who participated in discovery, provided information to Plaintiffs' Counsel to help litigate and settle these claims, and remained actively engaged throughout the entire litigation. Seven of these Service Award Recipients also had their depositions taken and were preparing for trial in Boston.

Defendant has also agreed to pay $900,000.00 to resolve Plaintiffs' Counsel's attorneys' fees and costs claims. Palitz Decl., Ex. A, Settlement Agreement at ¶ 2(iii). This amount was separately negotiated following the resolution of the amount to be paid to Plaintiffs. Palitz Decl. at ¶ 29.

## II.     Settlement Allocation and Distribution

The settlement amount to be paid to Plaintiffs will be divided in *pro rata* shares based on the number of workweeks each Plaintiff worked more than 40 hours in the position of Store Manager of a Legacy format store, within three years of the date of their filing of their consent to join forms through January 28, 2020 (the "Settlement Period").  Palitz Decl., Ex. A, Settlement Agreement at ¶ 3.1.  Each Plaintiff will receive the same dollar amount per workweek in which they worked more than 40 hours during the Settlement Period, except that regardless of the overtime weeks worked no Plaintiff will receive less than $100.  *Id.*  One-half of the payment will be taxed as IRS W-2 wages and the other half will be reported on an IRS Form 1099.  *Id.* at ¶ 6.

Pursuant to the Settlement, on the first business day after the Effective Date of the Settlement Agreement,[3] Defendant shall mail all settlement checks to Plaintiffs' Counsel.  *Id.* at ¶ 3.4.  Plaintiffs' Counsel will send a letter to the Opt-in Plaintiffs containing a copy of the release which Plaintiffs will be required to sign to receive their settlement checks.  *Id.* at ¶ 3.6.  Plaintiffs' Counsel will promptly mail the settlement check to the Plaintiff after receiving the executed copy of their release.  *Id.*

## III.     Release

To resolve these claims and in exchange for the settlement payments, Plaintiffs will provide a state and federal law wage and hour release to Defendant.  *Id.* at ¶ 7.

---

[3] The Effective Date is defined by the parties' Settlement Agreement as "on the later of (i) thirty (30) calendar days after the Court issues an order approving the Settlement and such order is entered on the docket in the Lawsuit if no appeal of that order is filed within that thirty (30) day period, or (ii) if an appeal is filed, ten (10) calendar days after the approval order has been affirmed and approved in its entirety with no further right of appeal or review." Palitz Decl., Ex. A, Settlement Agreement at p. 2.

## ARGUMENT

### I.    Court Approval of FLSA Settlements

In order for an employee to release FLSA claims, the Department of Labor or a court must approve the settlement and release. *Michaud v. Monro Muffler Brake, Inc*., No. 12-cv-00353, 2015 U.S. Dist. LEXIS 32526, at *25 (D. Me. Mar. 17, 2015).  "A court may approve a FLSA settlement if it is 'a fair and reasonable resolution of a bona fide dispute over FLSA provisions,' and at least one named plaintiff is willing to sign the agreement." *Id*. (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)).

In FLSA collective action settlements, courts follow a one-stage process for approving such settlements. *Lauture v. A.C. Moore Arts & Crafts, Inc*., No. 17-cv-10219, 2017 U.S. Dist. LEXIS 195147 (D. Mass. Nov. 28, 2017); *Krokos v. Fresh Mkt., Inc*., No. 16-cv-12082, 2018 U.S. Dist. LEXIS 204230 (D. Mass. Mar. 21, 2018).  This is because collective actions under Section 216(b) of the FLSA, 29 U.S.C. § 216(b), do not implicate the same due process concerns as Rule 23 class actions. *O'Connor v. Oakhurst Dairy*, No. 14 Civ. 192, 2015 U.S. Dist. LEXIS 67029, at *10 (D. Me. May 22, 2015) ("The due process safeguards built into Rule 23 class actions are not necessary in the FLSA collective action context.").  "Unlike Federal Rules of Civil Procedure Rule 23 class actions, FLSA collective actions require similarly situated employees to affirmatively opt-in and be bound by any judgment." *Cunha v. Avis Budget Car Rental, LLC*, 221 F. Supp. 3d 178, 181 (D. Mass. Oct. 26, 2016) (internal quotation omitted); *see also Genesis Healthcare Corp. v. Symczyk*, 133 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA[.]").  Accordingly, courts do not apply the exacting standards for approval of a class action settlement under Rule 23 to FLSA settlements. *See, e.g.*, *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013) ("[T]he standard for approval of an FLSA settlement

is lower than for a class action under Rule 23."); *see also Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (discussing due process concerns present in Rule 23 class actions that are not present in collective actions brought under Section 216(b)). Further, even in the class action context, which garner greater scrutiny over settlements than FLSA cases, a court should "not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011) (internal citations omitted). This is because "[s]ettlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977); *see United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990) ("[I]t is the policy of the law to encourage settlements."); *Durrett v. Hous. Auth. of City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990) (noting "the clear policy in favor of encouraging settlements") (internal quotation marks omitted). When adjudicating motions for approval of settlements, courts operate under a "strong presumption" in favor of approval. *Bennett v. D.L.S. Mktg., LLC*, No. 08 Civ. 611, 2009 U.S. Dist. LEXIS 38718, at *2 (M.D. Fla. May 7, 2009) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). In the settlement of an opt-in collective action under the FLSA, the Court's role is to ensure that the employer does not "overreach" and take advantage of employees in settling claims for wages. *See Lynn's Food*, 679 F.2d at 1354.

## II.    The Settlement Is Fair and Reasonable and Should Be Approved

While the First Circuit has not articulated a precise standard for assessing the fairness of a class or collective settlement, *see In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 71-72 (D. Mass. 2005) (internal quotations omitted), courts in this Circuit have approved FLSA settlements when

they are reached as a result of contested litigation to resolve *bona fide* disputes, *see e.g. Lauture*, 2017 U.S. Dist. LEXIS 195147; *Krokos*, 2018 U.S. Dist. LEXIS 204230.

Here, there can be no doubt that there is a *bona fide* dispute about whether or not Legacy Store Managers are eligible for overtime pay under the FLSA. *Michaud*, 2015 U.S. Dist. LEXIS 32526, at \*25. After full merits discovery for the Phase I Plaintiffs (which encompassed thousands of pages of document production, 17 depositions, and written discovery) the parties briefed and argued their FLSA disputes through summary judgment. Palitz Decl. at ¶ 10. The Court determined that a trial was necessary to resolve the parties' competing factual contentions as to two elements of the FLSA's executive exemption (i.e., the primary duty and hire/fire elements), on a plaintiff-by-plaintiff basis. Doc. 250. After about five years of litigation, the parties were on the brink of trial when they reached agreement to settle the claims. Palitz Decl. at ¶¶ 13-14.

While Plaintiffs believe they have strong claims, there are no guarantees at trial before a jury and Plaintiffs would face significant obstacles and risk the potential of an unsuccessful outcome if this case had proceeded to trial. Indeed, the summary judgment evidence contained evidence supporting both sides' positions on the remaining exemption issues and it is impossible to predict what a jury would have decided as to those factual disputes. In addition, after this trial, the parties faced many more years of litigation, multiple trials, and possible appeals for the remaining 101 Plaintiffs' claims before this case would be resolved. This settlement eliminates all of the uncertainties and risk associated with serial trials and appeals, and provides a fair and reasonable resolution to the disputed claims. *Id*. at ¶ 16. Only after a 19-hour mediation and arms-length negotiations with experienced counsel and the aid of a highly regarded mediator, were the parties able to resolve the claims. *Id*. at ¶ 14.

11

The $430,000.00 settlement is a fair and reasonable amount to resolve Plaintiffs' claims.[4] Under the settlement, $412,000.00 will be equitably allocated to Plaintiffs based upon the number of weeks in which they worked more than 40 hours during the Settlement Period as Legacy Store Managers, except the parties agreed to a minimum payment of no less than $100. Palitz Decl., Ex. A, Settlement Agreement at 3.1. The allocation of the settlement, based on the actual weeks Plaintiffs' worked overtime hours, is reasonable as it reflects a true proportion of the potential damages owed to Plaintiffs. *See* Declaration of Sam J. Smith In Support of Motion ("Smith Decl."), filed herewith, at ¶ 8; *see e.g., Lapan v. Dick's Sporting Goods, Inc*., No. 13 Civ. 11390, 2015 WL 8664204 at ECF No. 209-3 (D. Mass. Dec. 11, 2015) (approving class and collective overtime settlement agreement with an allocation formula based upon the number of weeks worked by class members).

Based on hours-worked and pay data produced by Cumberland Farms, Plaintiffs' Counsel calculated the back pay potentially owed to the 109 Plaintiffs as being equal to approximately $373,000 for a two-year liability period.[5] Smith Decl. at ¶ 8. The total potential damages

---

[4] The "Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005).

[5] The FLSA's statute of limitations is two years unless Plaintiffs were able to prove that Cumberland Farms willfully violated the law, in which case, the statute would have been extended to three years. *See* 29 U.S.C. § 255. To obtain a willfulness finding, Plaintiffs would have had to prove that Cumberland Farms "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133 (1988). The total potential backpay that could have been recoverable if Plaintiffs had proven both liability and willfulness equals approximately $666,000 and with a full-liquidated damages amount added, the total potential recoverable amount would have been approximately $1,332,000. Extending the statute of limitations to three years and recovering liquidated damages would have been challenging, however, because in denying Plaintiffs' motion for summary judgment on liquidated damages, the Court found that Cumberland Farms "relied on human resources professionals, one of whom is an attorney with knowledge of the

recoverable for a two-year statute of limitations would have been $746,000, if the Court awarded an equal amount of liquidated damages. *Id.* In the settlement agreement, Plaintiffs compromised and agreed to recover a total of $430,000, which is more than 115 percent of the two-year backpay damages that were potentially recoverable and more than 57 percent of the damages that were potentially recoverable if the Court had awarded full-liquidated damages. *Id.* The average settlement payment for the 109 Plaintiffs is equal to approximately $3,945. *Id.* The Plaintiffs have been informed, in advance of this motion, of the individual settlement amounts they will receive if the Court approves the Settlement and have expressed support for the settlement. *Id.* at ¶ 9 and Ex. C (requesting to file under seal).[6]

While Plaintiffs may have obtained a higher amount at trial (assuming they each won on liability, proved Defendant acted willfully to extend the FLSA statute of limitations from two to three years, and obtained liquidated damages by showing that Defendant did not act in good faith)—there were many risks at trial, including the jury finding the one or more of the Plaintiffs were properly classified as exempt and no overtime was due at all, and the risk and delay for

---

FLSA" in making its determination to classify the store managers at issue here as exempt from the overtime requirements of the FLSA. Doc. 250, at 30.

[6] Only one Plaintiff, Audrey Davis questioned whether the correct number of weeks were allocated to her pursuant to the settlement. Smith Decl., at ¶ 9. Ms. Davis asserted that she had filed a consent to join at the beginning of the case in approximately November of 2015, but no records of any Plaintiffs' counsel speaking with her during that time period were found. *Id.* Ms. Davis indicated that she only filed one consent to join in the case. *Id.* Ms. Davis' consent to join form was received from the third-party settlement administrator on September 6, 2016 and was filed with the Court on that date, *see* Dkt. 74-1. *Id.* A copy of Ms. Davis' consent to join was provided to her, the timing of its receipt and filing with the Court was explained to her, and the formula for allocating the settlement was detailed to her, but she has not responded to further efforts by Plaintiffs' counsel to speak to her about the timing of the filing of her consent to join. *Id.* Under the settlement, she is treated the same as all of the Plaintiffs and Opt-in Plaintiffs in that all were allocated weeks based any overtime weeks worked in the period after the date that was three years prior to the date of their consent to join forms being filed with the Court, as required under the FLSA. *Id.*

appeals, which favor settlement. Palitz Dec. at ¶ 16. Moreover, this settlement allows Plaintiffs to obtain monetary relief now and not after many more years of litigation. *Id*.

The settlement negotiated by the parties bears all the indicia of fairness warranting approval as set forth in *Lynn's Food Stores* because Plaintiffs were represented by experienced counsel, who, in the adversarial context of a lawsuit engaged in "serious, informed, non-collusive (arm's length") negotiations" of "a bona fide dispute between the parties with respect to coverage [and] amount due under the Act," resulting in a fair, and reasonable compromise of claims in settlement. *See Berkson v. Gogo LLC*, 147 F. Supp. 3d 123, 130 (E.D.N.Y. 2015); *Lynn's Food Stores*, 679 F.2d at 1353-54, n.8. Plaintiffs' Counsel considers the settlement to substantially benefit the Plaintiffs, especially when weighed against the uncertain outcome at trial, risk of continued litigation, and the expense and delay which would result from prosecuting this action through completion. Palitz Decl. at ¶ 16. The settlement terms represent a successful resolution, given the fact that the jury might have concluded that Plaintiffs are (or were) exempt or entitled to substantially less damages than agreed to in the settlement. *Id*. When balancing all of these risks against the settlement amount, it is the position of Plaintiffs that the amount fairly takes into account the risks and provides a fair amount to settle their disputed claims. *Id*.

### III.   The Modest Service Payments to the Named Plaintiffs and Phase I Plaintiffs Are Appropriate and Should Be Approved

Courts award service payments because "plaintiffs in class and collective actions play a crucial role in bringing justice to those who may otherwise have no access to judicial enforcement of their rights." *Krokos*, 2018 U.S. Dist. LEXIS 204230, at *5. Indeed, "[i]ncentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, the public nature of a collective action filing, and any other burdens they sustain." *Id*. Plaintiffs request that

14

the Court approve nine service award payments of $2,000.00 each to the Named Plaintiffs and Phase I Plaintiffs. Courts routinely approve service awards in these types of cases and the Named Plaintiffs and Phase I Plaintiffs deserve additional compensation for their efforts in litigating this case on behalf of others and in achieving this settlement. *E.g., Lauture*, 2017 U.S. Dist. LEXIS 195147, at *7 (approving $15,000 service payments to named plaintiffs); *Krokos*, 2018 U.S. Dist. LEXIS 204230, at *5-7 (approving service awards of $4,500 to named plaintiffs); *Scovil v. FedEx Ground Package Sys.*, No. 10 Civ. 515, 2014 U.S. Dist. LEXIS 33361, at *29-32 (D. Me. Mar. 14 2014) (approving service payments between $10,000 to $20,000 to the named plaintiff and other class members who contributed to the settlement); *see Shahriar v. Smith & Wollensky Rest. Group, Inc.,* 659 F.3d 234, 244 (2d Cir. 2011) (noting how employees "may choose not to assert his or her FLSA rights" through a lawsuit due to fear "of retaliation or of being blackballed in his or her industry").

In this case, the Named Plaintiffs and Phase I Plaintiffs protected the interests of all Plaintiffs by taking actions that resulted in this substantial settlement. *See* Palitz Decl. at ¶¶ 40-45. They all provided information and documents which were crucial to establishing Plaintiffs' claims, many sat for depositions, they assisted Plaintiffs' Counsel in preparing pleadings and other court filings, they remained in active communication with Plaintiffs' Counsel to develop litigation strategy and assist Plaintiffs' Counsel during the litigation. *Id*. at ¶¶ 42-43. Furthermore, the Phase I Plaintiffs were prepared to come to Boston for the three-week jury trial. *Id*. at ¶ 43. Their time, effort, and dedication to this case was crucial in achieving this settlement on behalf of all Plaintiffs. *Krokos*, 2018 U.S. Dist. LEXIS 204230, at *5-6; *Lauture*, 2017 U.S. Dist. LEXIS 195147, at *7.

IV.    **The Court Should Approve Plaintiffs' Attorneys' Fees and Costs**

The FLSA is a fee-shifting statute, which provides for plaintiffs' counsel to obtain reasonable attorneys' fee and costs of the action if their clients prevail. *See* 29 U.S.C. § 216(b). Statutory fee-shifting provisions reflect legislative judgment that the public as a whole has an interest in vindicating rights conferred by statute, beyond any gain to a particular plaintiff. *Joyce v. Town of Dennis*, 720 F. 3d 12, 31 (1st Cir. 2013). "'The function of an award of attorney's fees is to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel.'" *Riverside v. Rivera*, 477 U.S. 561, 578 (1986) (quoting *Kerr v. Quinn*, 692 F.2d 875, 877 (2d Cir. 1982)); *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 U.S. Dist. LEXIS 1120, at *9 (S.D.N.Y. Jan. 7, 2010) ("Attorneys' fees spring from an entirely different source. They are not meant to compensate plaintiffs, but rather to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel. But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected."). Plaintiffs' Counsel also seek reimbursement of their "reasonable expenses of litigation," to which they are entitled via the fee-shifting statute if they ultimately prevail in the action. *Riley v. Mass. Dep't of State Police*, No. 15 Civ. 14137, 2019 U.S. Dist. LEXIS 174182, at *3-5 (D. Mass. Oct. 8, 2019); *Lauture*, 2017 U.S. Dist. LEXIS 195147, at *2; *Krokos*, 2018 U.S. Dist. LEXIS 204230, at *5-7; 29 U.S.C. § 216(b).[7]

---

[7] Plaintiffs' Counsel have incurred litigation costs totaling $93,945.62. Smith Decl. at ¶ 10. These costs were necessary to the prosecution of this lawsuit and include: $1,174.03 in filing fees and service of summons; $26,108.60 for electronic discovery costs; $4,848.86 in postages, copying, and courier; $17,000 in notice administration; $18,795.88 in transportation, lodging and meals; $16,173.70 in deposition and court transcripts; $1,766.75 in expert witness fees; $8,256.62 in mediator fees; $391.38 in electronic research. *Id.* The amount of costs and expenses paid by each

Awards for attorneys' fees and costs in FLSA cases often exceed the amount of damages at issue for the plaintiffs, and fee awards need not be proportional to the recovery for the plaintiffs. *Riverside*, 477 U.S. at 579 ( "A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts."). Recently, the Second Circuit reversed a district court's decision that reduced attorneys' fees to 33% of the settlement amount in an FLSA case—finding the district court had abused its discretion. *Fisher v. SD Protection Inc. et al.*, 948 F.3d 593, 602 (2d Cir. Feb. 4, 2020). The Second Circuit rejected "the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation"-- finding that "[a] proportionality rule would also be inconsistent with the remedial goals of the FLSA, which we have deemed a "uniquely protective statute." *Id*. The court recognized that "[t]he Supreme Court, this Court, and district courts in this Circuit have long recognized the significance of attorneys′ fees in civil rights cases and have not hesitated to award or approve disproportionate fees to counsel." *Fisher*, 2020 WL 550470 at *8 citing *Riverside*, 477 U.S. at 579 (upholding award of $245,456.25 in fees, even though plaintiffs recovered only $33,350). *See also*, *Millea v. Metro-North R.R.*, 658 F.3d 154, 169 (2d Cir. 2011) ("[t]he whole purpose of fee-shifting statutes is to generate attorneys' fees that are disproportionate to the plaintiff's recovery."); *Riley*, 2019 U.S. Dist. LEXIS 174182, at *3-5 (in employment case, awarding attorneys' fees in the amount of $960,042.20 and costs of $57,740.93, where judgment for plaintiffs was for $130,000.00). While Plaintiffs' attorneys' fees

---

firm representing Plaintiffs, by category, is attached to Smith Decl., Ex. D. Plaintiffs' Counsel paid for all of these costs out-of-pocket and have not been reimbursed for any costs to date. Palitz Decl., at ¶¶ 35-36. If this litigation was not successful and no settlement was obtained, Plaintiffs' Counsel would have not have been able to recover any of the costs it expended on behalf of the Plaintiffs. *Id*. Plaintiffs' Counsel took on these risks to benefit the Plaintiffs and this further supports their request for reimbursement of costs. *See Riverside v. Rivera*, 477 U.S. at 578.

here are greater than the damages recovered for the Plaintiffs, this is not uncommon in FLSA actions and does not change the excellent results obtained for the Plaintiffs in this case.

Consistent with the Settlement Agreement, Plaintiffs seek approval for $900,000.00 in attorneys' fees and costs. As set forth below, Plaintiffs' Counsel's total lodestar for work performed on or before March 18, 2020 and after significantly reducing the hours worked through exercising billing judgment is $1,441,313.47 and their out-of-pocket costs and expenses are $93,945.62. *See* Smith Decl. at ¶ 7. Nonetheless, to settle this matter, *after* reaching a reasonable and fair settlement to Plaintiffs' underlying claims, Plaintiffs' Counsel separately negotiated their fees, substantially reducing their fees and expenses by over $635,259.09 (Lodestar fees of $1,441,313.47 plus costs and expenses of $93,945.62 minus fees, costs, and expenses recovered of $900,000.00). The fees and costs requested in this FLSA collective action are fair and reasonable in light of (1) the hours Plaintiffs' Counsel expended over the course of five years in this adversarial case combined with their reasonable rates, (2) the extensive reduction Plaintiffs' Counsel has agreed-to to resolve this matter, and because (3) the fees and costs were negotiated separately and will not be deducted from the Plaintiffs' recovery.

### A.    Plaintiffs' Counsel's Hours Expended and Rates Are Reasonable

To determine whether the fees sought would be an appropriate award, the Court may use the lodestar method, multiplying the reasonable number of hours expended by a reasonable hourly rate. *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008); *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir. 2001).

Plaintiffs' Counsel conducted billing judgment on their records to address time where there was duplication by multiple timekeepers or where a timekeeper may have spent too much

time on a project.[8]  Smith Decl. at ¶ 7.  Prior to conducting billing judgment, the time expended in

this case through March 18, 2020, amounted to $ 1,828,838.47.  *Id*. at ¶ 7 and Ex. A.  In exercising

billing judgment, Plaintiffs' Counsel reduced their total lodestar by 21 percent to $1,441,313.47.

*Id*.  If Plaintiffs were to submit their time to the Court in adversarial attorneys' fee dispute,

Plaintiffs would defend this reduced amount as being the appropriate lodestar amount to be paid

to Plaintiffs' Counsel.  *Id*.  A summary of the hours recorded, pre-and post-billing judgment, by

timekeeper and categorized by the tasks performed, are attached as Exhibits A and B, respectively,

to the Declaration of Sam J. Smith.  *Id*.  In addition, Plaintiffs' Counsel's rates and hours worked

are summarized in the below chart (*see* Palitz Decl. at ¶ 31):

| Attorney | Rate | Hours Worked After Billing Judgment | Total Lodestar |
|---|---|---|---|
| Sam Smith, Partner, 31 years of experience | $600 | 147 | $88.620 |
| Gregg Shavitz, Partner, 26 years of experience | $600 | 117.2 | $70,320 |
| Brendan Donelon, Partner, 25 years of experience | $600 | 72.1 | $43,260 |
| Steven Churchill, Partner 26 years of experience | $600 | 3.4 | $2,040 |
| Hillary Schwab, Partner, 21 years of experience | $600 | 44.3 | $26,580 |
| Loren Donnell, Partner, 14 years of experience | $500 | 291.3 | $145,668.47 |

---

[8] Each timekeeper in this case has maintained their billable hours as to each activity with detail
and each time entry represents the distinct contribution of that timekeeper.  Smith Decl. at ¶ 7. The
timekeepers in this case have maintained their time contemporaneously with the tasks performed
and have reported each discrete task in six-minute intervals. *Id*.  Copies of Plaintiffs' Counsel's
voluminous detailed time records can be produced to the Court upon its request.

| | | | |
|---|---|---|---|
| Michael Palitz, Partner,<br>10 years of experience | $600 | 914.8 | $457,400 |
| Christine Duignan,<br>Of Counsel,<br>29 years of experience | $500 | 38.1 | $20,955 |
| Alan Quiles, Associate,<br>25 years of experience | $550 | 45.3 | $24,915 |
| Tamra Givens, Associate,<br>16 years of experience | $500 | 747.5 | $373,750 |
| Rachel Smit, Associate,<br>7 years of experience | $400 | 74.3 | $29,700 |
| Paralegals | $150 | 360.5 | $54,075 |

The hours expanded for this complex action are reasonable. This collective action on behalf of 108 Plaintiffs required extensive work. Plaintiffs' Counsel were able to successfully obtain conditional certification, manage a geographically diverse group of clients and obtain information and documents, take and defend depositions throughout the east coast, analyze and review more than 113,000 pages of documents, and defeat summary judgment motions filed against the Phase I Plaintiffs. Plaintiffs' Counsel were preparing for a complex, three-week trial when they were able to successfully negotiate this settlement. *Supra* at 6. Specifically, Plaintiffs' Counsel spent 122.9 hours on pre-suit investigation, settlement demands, and drafting the complaint and amended complaints; 184.2 hours preparing a section 216(b) motion, stipulation, facilitating notice to the collective, and communicating with over 109 Plaintiffs; 178.3 hours on litigation related to representative discovery versus discovery of all opt-in plaintiffs (which required multiple briefs and several oral hearings to resolve); 1,374.6 hours on Phase I discovery, including, but not limited to producing documents and collecting information from all Plaintiffs, reviewing more than 113,000 of pages of documents produced by Cumberland Farms, taking and

defending 17 depositions, and the briefing of numerous discovery motions following lengthy conferrals; 599.7 hours preparing, opposing, and arguing motions for summary judgment and related filings including motions to strike evidence; 315.4 hours for pretrial preparations with clients located in different states; and 308.9 hours preparing post complaint demands (which required the review of all Plaintiffs' personnel files), mediation and settlement negotiations, and preparing the final Settlement Agreement and settlement approval papers. *See* Smith Decl. at ¶ 7; Palitz Decl. at ¶¶ 4-14. Furthermore, throughout this five-year litigation, Plaintiffs' Counsel spent over 3,000 hours working on this case without payment to the exclusion of other fee generating cases they could have worked on, while simultaneously bearing the full risk that a loss would result in no compensation for the time they expended. Palitz Decl. at ¶ 37.

Plaintiffs' Counsel's efforts and dedication to the Plaintiffs over the last five years played a large part in reaching this settlement. When evaluating the fee request, Plaintiffs' Counsel's accomplishments in attaining this settlement should be evaluated in light of the quality of opposing counsel. Defendant was represented by Seyfarth Shaw, LLP ("Seyfarth") – a global law firm with more than 900 lawyers. Palitz Decl. at ¶ 40. One of Defendant's lead counsel, before his retirement, served as Seyfarth's Chair of its National Wage and Hour Litigation Practice Group. *Id*. Defendant's other lawyers are experienced wage and hour trial lawyers who competently represented Defendant in this case. *Id*. Seyfarth's employment defense practice group is consistently ranked as one of the best in America. Notwithstanding the high quality defense counsel representing Defendant, a substantial settlement was achieved. *Id*.

The rates that Plaintiffs' Counsel seek for each timekeeper are also reasonable and are based upon their skills and experience. Plaintiffs' Counsel has substantial experience litigating unpaid overtime class and collective action cases. Palitz Decl. at ¶¶ 17-28; Smith Decl. at ¶¶ 2-6.

Each of the firms representing the Plaintiffs have served as class and collective counsel in scores of cases and have recovered hundreds of millions of dollars in unpaid wages for workers. *Id.* The hourly rates sought by Plaintiffs' Counsel in this case are consistent with rates charged by other attorneys who litigate employment class and collective action cases in this District, and what Plaintiffs' Counsel has been awarded in other cases. *See e.g. Riley v. Mass. Dep't of State Police*, No. 15 Civ. 14137, 2019 U.S. Dist. LEXIS 174182, at *3-5 (D. Mass. Oct. 8, 2019) (approving rates between $350 to $600 hours for attorneys in civil rights case); *Davis v. Footbridge Eng'g Servs., LLC*, No. 09CV11133-NG, 2011 WL 3678928, at *3 (D. Mass. Aug. 22, 2011) (awarding partners $650 per hour in wage and hour action and relying on similarly awarded rates (up to $735 per hour) in other actions); *Varghese v. J.P. Morgan Chase*, No. 14 Civ. 01718 (S.D.N.Y.) (approving rates of $650 and $500 an hour for attorneys Shavitz and Palitz, respectively) (Palitz Decl., Exhibit B at p. 21).[9]

## B.    Plaintiffs' Requested Fee Is 56% Less Than Their Lodestar After Billing Judgment and Costs

Importantly, Plaintiffs' Counsel do not seek their Lodestar; rather, they seek $900,000 (approximately 56% of their Lodestar after billing judgment and reimbursement of costs and

---

[9] These rates are consistent with the hourly rates obtained by counsel with comparable experience practicing in this market *See, e.g., Commonwealth Care Alliance v. AstraZeneca Pharm., LP*, 2013 WL 6268236, at *1–*2 (Mass. Super. Aug. 5, 2013) (approving hourly rates of $590 for a senior partner practicing in Boston); *Tuli v. Brigham & Women's Hospital*, Case No. 07-12338 (D. Mass. June 8, 2009) (approving rates of $570 to $615 for plaintiffs' attorney with 17 years' experience, and $410 to $495 for attorney with 4 years' experience); *Carter v. Newton Hospitality, Inc.*, Suffolk Case No. 07-3383 (Mass. Super. Aug. 21, 2009) (approving hourly rate of $585 for plaintiffs' attorney with 14 years' experience); *see also* Brandon Gee, "The Going Rate(s)," Massachusetts Lawyers Weekly (Oct. 11, 2013) (in a review of hourly rates across all practice areas in Boston for the year 2012, finding that partners earn, on average, hourly rates of $598 and associates earn an hourly rate of $388), *available at* https://masslawyersweekly.com/2013/10/11/the-going-rates/.

expenses) from Defendant.  *See* Smith Decl. ¶ 7.  In light of the risks that are inherent with trial and the unknown trajectory for the remaining 101 Plaintiffs following the Phase I Plaintiffs' trial, the settlement achieved by Plaintiffs' counsel is an excellent one and Plaintiffs' counsel should be awarded the fees and costs they seek.  Five years of adversarial litigation resulted in Plaintiffs' Counsel incurring a substantial amount of fees and costs.  While Plaintiffs' Counsel's Lodestar after billing judgment and costs is reasonable and supportable, Plaintiffs' Counsel seek to recovery only 56 percent of their Lodestar, which equals an additional reduction of $635,259.09, to resolve this case.  Smith Decl. at ¶ 7 and Ex. A.  The substantial reduction supports the reasonableness of the fees and costs requested.

       **C.**    **Plaintiffs' Fees and Costs Were Separately Negotiated After the Amount for the Plaintiffs Was Settled.**

Some courts have determined that when attorneys' fees and costs are separately settled in an FLSA case after a resolution is reached for the plaintiffs' underlying claims, there is no need to consider the reasonableness of the attorneys' fees and costs requested. *See Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (finding "that [when] the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel").  Indeed, in *Barbee v. Big River Steel, LLC*, the Eighth Circuit recently held that there is no requirement under the FLSA for judicial approval of separately settled attorney fees. 927 F.3d 1024, 1027 (8th Cir. 2019).  Here, the fact that Plaintiffs' attorneys' fees and costs were separately negotiated only after a settlement of the underlying claims was obtained through the assistance of experienced mediator further supports the reasonableness of the fees and

costs requested and demonstrates that the fee agreed to by Defendant in this case did not affect Plaintiffs' recovery.  *See* Palitz Decl. at ¶ 29.

## **CONCLUSION**

Plaintiffs present this settlement to the Court for approval.  After multiple years of intense litigation and on the brink of trial, Plaintiffs were able to achieve this settlement, which benefits all Legacy Store Managers who joined this case.  This settlement resolves heavily disputed FLSA claims, which, if not resolved, would likely have been litigated for many more years in multiple trials and appeals.  This settlement is a fair resolution of these claims and provides significant monetary relief to the Plaintiffs and closure for Defendant.  Plaintiffs respectfully request that the Court approve this settlement.[10]

A Proposed Order is attached to the Palitz Declaration as Exhibit C.


Dated: April 13, 2020

|  | Respectfully submitted, |
|---|---|
|  | DIANNE BUCCERI, JANET CHARAK, and LISA SANDERS, on behalf of themselves and all others similarly situated, |
|  | By their attorneys, |
|  | /s/ Michael J. Palitz |
|  | Michael J. Palitz, admitted pro hac vice SHAVITZ LAW GROUP, P.A. 800 3rd Avenue, Suite 2800 New York, NY 10022 (800) 616-4000 |

---

[10] We would be remiss if we did not thank the Court and its clerks for its efforts during this case. The issues in this case were complicated and the motions included hundreds of pages of exhibits and deposition testimony.  We recognize the enormous effort expended by the Court on this case and are very grateful for it.

mpalitz@shavitzlaw.com

Gregg Shavitz, admitted pro hac vice
Tamra Givens, admitted pro hac vice
SHAVITZ LAW GROUP, P.A.
951 Yamato Road, Suite 285
Boca Raton, FL 33431
(561) 447-8888
gshavitz@shavitzlaw.com
tgivens@shavitzlaw.com

Sam J. Smith, admitted pro hac vice
Loren B. Donnell admitted pro hac vice
BURR & SMITH, LLP
9800 4th Street North, Suite 200
St. Petersburg, FL 33702
 (813) 253-2010
ssmith@burrandsmithlaw.com
tgivens@burrandsmithlaw.com

Brendan J. Donelon, admitted pro hac vice
DONELON, P.C.
4600 Madison, Suite 810
Kansas City, MO 64112
(816) 221-7100
brendan@donelonpc.com

Hillary Schwab (BBO# 666029)
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3261
hillary@fairworklaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2020 this document was filed through the Court's ECF system and that Defendant's counsel includes registered users designated to receive Notices of Electronic Filings in this matter.

/s/ Loren B. Donnell_____
Loren B. Donnell