## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIANNE BUCCERI, JANET CHARAK, and LISA SANDERS, on behalf of themselves and all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CUMBERLAND FARMS, INC.<br><br>Defendant. | CIVIL ACTION NO. 1:15-CV-13955 |

## DECLARATION OF MICHAEL PALITZ IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION TO APPROVE THE PARTIES' FAIR LABOR STANDARDS ACT SETTLEMENT

1.  I am a partner in the firm of the Shavitz Law Group, P.A. ("SLG") in New York, New York. SLG is an eight attorney firm based in Boca Raton, Florida with an office in New York, New York that focuses on representing workers as plaintiffs in employment-related matters, including claims based upon individual and class-wide violations of state and federal wage and hour laws.

2.  I am a member in good standing of the bar of the states of New York and New Jersey. I am admitted to practice *pro hac vice* in this matter.

3.  I submit this declaration in support of this settlement and Plaintiffs' Unopposed Motion. I have personal knowledge of the matters set forth herein and would so testify if called as a witness.

1

**LITIGATION HISTORY AND WORK PERFORMED BY PLAINTIFFS' COUNSEL**

4. This case concerns a contentious dispute over whether or not Plaintiffs (who worked as Store Managers at Defendant's Legacy stores) are exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA").

5. Plaintiffs' Counsel conducted an in-depth investigation into Defendant's compensation practices which included, among other things, communicating with Store Managers who worked in different locations throughout the country to learn about their job duties, hours worked, and other aspects of their jobs, reviewing Defendant's operational and compensation practices, and researching the executive and administrative exemptions to the FLSA and considering whether Store Managers' duties fit within these exemptions. Plaintiffs' Counsel contacted Defendant about these claims to attempt to engage in a pre-suit settlement dialogue. However, Defendant maintained that it believed it correctly classified Legacy Store Managers as exempt from the FLSA. Accordingly, Plaintiffs filed this lawsuit on November 25, 2015. Doc. 1.

6. After Defendant answered, the parties addressed whether or not the Court would authorize notice of this lawsuit to the putative FLSA collective action members. Plaintiffs prepared their motion for conditional certification and obtained evidence to support the motion. The parties appeared before this Court on February 24, 2016 and discussed conditional certification and the applicable notice standard. The parties thereafter submitted their competing positions in briefs. Doc. 37, 38.

7. Thereafter, the parties conferred and then reached an agreement whereby the Plaintiffs could send a notice of this lawsuit to other Legacy Store Managers (Doc. 40). The parties negotiated the content of the notice and the notice process. Following Court approval of that stipulation, the parties disagreed as to the interpretation of the stipulation and Plaintiffs filed a

motion for clarification addressing the content of the notice. Doc. 50. After the Court resolved the notice content issues, Plaintiffs' Counsel hired a claims administrator to mail notice of this lawsuit to the Legacy Store Managers. Ultimately, 105 Plaintiffs joined the three Named Plaintiffs in the collective action for a total of 108 Plaintiffs.

8. The parties then disputed whether Defendant could obtain discovery from all Plaintiffs or, instead, limit the discovery to a representative sample of the Plaintiffs. The parties briefed that issue for the Court (Doc. 66, 76), and the Court held oral argument on this issue and decided that the parties would need to provide certain information and documents relating to all Plaintiffs. Doc. 84. Given the large number of Plaintiffs who joined the case, Plaintiffs' Counsel spent substantial time conferring with all Plaintiffs, obtaining the required information and documents, and producing documents to Defendant.

9. The parties continued to dispute the scope of discovery and how many Plaintiffs would need to participate in discovery. The parties continued to brief this issue (Doc. 100, 102) and on January 26, 2017, the parties appeared before the Court to address the scope of discovery again. The Court ordered the parties to submit additional briefing as to how to efficiently resolve the liability issues in this case. Doc. 108. The parties submitted their competing briefing addressing their competing plans for resolving liability and appeared before the Court to address this matter on February 14, 2017. Doc. 112, 113. The Court resolved the discovery dispute and ordered further discovery to proceed as to a group of Plaintiffs known as the "Phase I Plaintiffs." Doc. 115.

10. The parties served comprehensive written discovery related to the Phase I Plaintiffs, and conferred frequently about discovery issues and document productions, including extensive negotiations over ESI. Defendant produced 113,459 pages of documents in this case, which

3

Plaintiffs' counsel reviewed. The parties took 17 depositions: which included seven Phase I Plaintiffs, six Area Sales Managers, and four corporate representative depositions. These depositions (which took place at locations from Maine to Florida) covered topics such as the Legacy Store Managers' job duties and hours worked, Defendant's policies and procedures relating to compensation, timekeeping, operations, and merchandising, Defendant's affirmative defenses as to exemption issues and good faith, and whether or not Defendant willfully violated the law. Plaintiffs also moved to compel certain documents relating to Store Manager training, electronic discovery, and a time study conducted by Defendant. Doc. 149-151.

11. Once discovery was completed, the parties filed competing motions for summary judgment. Defendant moved for summary judgment as to the executive exemption for 6 of the 7 Phase I Plaintiffs. The parties thoroughly briefed the FLSA executive exemption, the primary duty regulation, the good faith affirmative defense, the methodology used to calculate damages, and the extensive factual record in this case. Both sides submitted approximately 100 exhibits in connection with their summary judgment motions. The parties also briefed multiple motions to strike. Doc. 225, 227.

12. On November 19, 2018, the Court held oral argument on the summary judgment motions and motions to strike, and the parties argued these motions for several hours addressing all of the issues. Doc. 181, 202, 221, 230, 236. On July 18, 2019, the Court issued an Order on the summary judgment motions. Doc. 250. Following that Order, the parties prepared for trial to address two elements of the FLSA executive exemption which remained at issue – the primary duty and the hire and fire prongs, *see* 29 C.F.R. § 541.100 – and whether or not Defendant willfully violated the law.

13.     At the January 14, 2020 pre-trial conference, the parties and the Court discussed the trial and the pre-trial deadlines for the parties' submissions.  In months leading up to the pre-trial conference, the Plaintiffs began to prepare for a three-week trial set to begin on March 2, 2020.  Plaintiffs' Counsel prepared their trial witness and exhibit lists, and had begun preparing the Phase I Plaintiffs and their witnesses for trial.  However, at the pre-trial conference, the parties discussed potentially trying to resolve this case through mediation.

14.     On January 27, 2020, the parties met in Boston to mediate with an experienced employment law mediator, D. Charles Stohler, Esq., to assist the parties settle the claims.  Prior to the mediation, the parties submitted comprehensive mediation statements setting forth their positions as to liability and damages.  The parties met at 9:00 a.m. on January 27, 2020 and mediated until almost 4:00 a.m. on January 28, 2020.  The parties did not reach an agreement during this time, but agreed to continue discussing settlement with the assistance of Mr. Stohler.  On January 29, 2020, the parties agreed to terms of a settlement and entered into the fully executed settlement agreement on April 1, 2020.

15.     This settlement brings substantial monetary relief to the Plaintiffs with an average gross settlement payment of $3,945.

16.     Plaintiffs' Counsel considers the settlement to substantially benefit the Plaintiffs, especially when weighed against the uncertain outcome at trial, risk of continued litigation, and the expense and delay which would result from prosecuting this action through completion.  While Plaintiffs believe they have strong claims, there are no guarantees at trial before a jury and Plaintiffs would face significant obstacles and risk the potential of an unsuccessful outcome if this case had proceeded to trial.  Indeed, the summary judgment evidence contained evidence supporting both sides' positions on the remaining exemption issues and it is impossible to predict

5

what a jury would have decided as to those factual disputes. In addition, after this trial, the parties faced many more years of litigation, multiple trials, and possible appeals for the remaining 101 Plaintiffs' claims before this case would be resolved. This settlement eliminates all of the uncertainties and risk associated with serial trials and appeals, and provides a fair and reasonable resolution to the disputed claims. The settlement terms represent a successful resolution, given the fact that the jury might have concluded that Plaintiffs are exempt or entitled to substantially less damages than agreed to in the settlement. Moreover, this settlement allows Plaintiffs to obtain monetary relief now and not after many more years of litigation. When balancing all of these risks against the settlement amount, it is the position of Plaintiffs that the amount fairly takes into account the risks and provides a fair amount to settle their disputed claims.

## **PLAINTIFFS' COUNSEL'S BACKGROUND AND EXPERIENCE**

17. For the past 20 years, SLG has focused on representing workers in wage and hour matters. My background and those of other SLG employees who worked on this matter are detailed below.

18. I am a Partner in SLG's New York City office and have been with the firm since 2015. After receiving my Juris Doctor degree, *cum laude,* from Pace Law School in 2010 where I also served as the Editor-in-Chief of the Pace International Law Review, I was admitted to the New Jersey and New York Bars in June 2010 and September 2010, respectively. I also am admitted to the U.S. District Courts for the District of New Jersey, the Eastern District of New York, the Southern District of New York, the Northern District of New York, the District of Colorado, and the Western District of New York. I presented at a CLE panel for the Suffolk County Bar Association on FLSA issues. Since graduating from law school, I have focused my practice exclusively on workers' rights and litigating complex wage and hour class and collective

actions throughout the country, including trying an FLSA collective action arbitration to a verdict for employees. I graduated from the College of the Holy Cross in Worcester, Massachusetts in 2005 with a B.A. in Economics and History.

19. Gregg Shavitz started SLG in 1999 and is the Managing Partner of the firm. He is a graduate of the University of Miami School of Law with an undergraduate degree from Tufts University.

20. Mr. Shavitz an experienced litigator and member of the bar of the U.S. District Court for the Southern District of Florida and the Florida Bar since 1994, and is also admitted to U.S. District Courts for the Middle and Northern Districts of Florida, the District of Colorado, the United States Eleventh Circuit Court of Appeals, and United States Third Circuit Court of Appeals.

21. Additionally, Mr. Shavitz has lectured in the past at seminars sponsored by the Labor and Employment Section of the Florida Bar, and have spoken at the Labor and Employment Section Certification Review Seminar as well as the Academy of Florida Trial Lawyers Workhorse Seminars. Mr. Shavitz has also been awarded Florida Trend Magazine's Legal Elite for various years including 2014 in the area of Labor & Employment law; South Florida Legal Guide – Top Lawyer – Wage and Hour law – 2009-2018; Top Lawyer Up and Comer – Wage and Hour law – 2004, 2006, and 2009; and South Florida Legal Guide – Top Lawyers List – 2009-2018; among other awards and honors. Mr. Shavitz has also earned the distinction of Top Lawyer in Palm Beach Illustrated (2011) and is a lifelong fellow of the Florida Bar Foundation.

22. Mr. Shavitz has held the highest AV Peer Review Rating from LexisNexis Martindale-Hubbell for preeminent attorneys from 2000 to the present.

23. Attorney Christine Duignan is Of Counsel to SLG and provides litigation support in complex wage and hour actions arising under the FLSA and Rule 23, in a variety of jurisdictions

nationally. Ms. Duignan has worked for the Shavitz Law Group, P.A. for 16 years and regularly works on behalf of workers to ensure fair treatment and compensation in the workplace. Ms. Duignan also handles appeals in cases involving a wide variety of employment matters. Ms. Duignan is a 1988 graduate of the University of Tampa and received her Juris Doctor degree from the University of Florida in 1991. She has been a member of the Florida bar since 1991, and is also admitted to practice in the U.S. District Court for the Southern District of Florida, United States Court of Appeals for the Eleventh Circuit, and the United States Supreme Court.

24. Attorney Alan Quiles is an Associate Attorney at SLG who focuses his practice in the area of employment law, specifically in the recovery of unpaid wages, overtime and minimum wages. He has 20 years of legal experience and has represented employees and employers in employment claims in state and federal courts since 1997. His experience includes representing clients in state and federal discrimination claims, FLSA claims, FMLA claims, WARN Act claims, USERRA claims, OSHA, ERISA, COBRA, state minimum and unpaid wage claims, state unemployment claims, state and federal whistleblower claims, workers' compensation retaliation claims, and HIV/AIDS claims. He has also represented employees through the EEOC and state administrative processes and represented employees in arbitration proceedings before the NASD (now FINRA), AAA and others. He has also successfully litigated non-compete and trade secret claims. Mr. Quiles also represents clients in appellate matters at all levels of the state and federal appellate system, and has published articles on various employment law issues and presented seminars on employment law issues. Mr. Quiles graduated from Cornell University School of Law in 1995 after receiving his Bachelor of Arts in Psychology, *cum laude*, from the University of Houston. He is a member of the Florida and Texas State Bars and admitted to practice in the U.S. District Courts for the Southern and Eastern Districts of Texas, the District of Colorado and the

Southern and Middle Districts of Florida, as well as the United States Courts of Appeals for the Eleventh Circuit. Mr. Quiles is AV-Preeminent rated by Martindale Hubble.

25. Tamra Givens, was a senior associate at Burr & Smith, and is now a senior associate with SLG. She has been admitted to The Florida Bar since 2003. Ms. Givens' legal practice is focused on class and collective employment litigation and consumer class actions. She obtained her undergraduate degree in Psychology from the University of Florida, with honors, in 2000, and earned her law degree from the University of Florida, cum laude, in 2003. During law school, Ms. Givens was a member of the University of Florida Law Review and published a case comment titled "Constitutional Law: Narrowing the Scope of the Fourth Amendment," 54 Fla. L. Rev. 567 (2002). Ms. Givens also completed an internship at the Florida Supreme Court where she served as an intern to Justice Harry Lee Anstead. Ms. Givens has dedicated her career to representing employees and consumers in class litigation. Ms. Givens began her career as an associate of James, Hoyer, Newcomer & Smiljanich, P.A., where she focused her practice on consumer class action litigation. Prior to joining Burr & Smith, Ms. Givens practiced in Morgan & Morgan's Complex Litigation Department, where she played an instrumental role in building Morgan & Morgan's class action section. Ms. Givens is a former law clerk to the Honorable James D. Whittemore, United States District Judge, United States District Court for the Middle District of Florida.

26. Rita Claude, Serena Eifert, Tayara Oliviera, and Marilyn Chong are legal assistants at SLG who work in the class and collective action practice group. They provide litigation support including case investigations, client intakes, and handling discovery matters and document productions. They all played an important role in this case which required a substantial amount of discovery and coordination with the Plaintiffs to obtain documents and information.

27. SLG has significant experience prosecuting wage and hour class and collective actions such as this one. In recent years, the firm has served or been appointed as class counsel or co-class counsel in the following cases, among others:

*Aboud v. Charles Schwab & Co.*, No. 14 Civ. 2712 (S.D.N.Y.);

*Amador v. Morgan Stanley & Co, LLC,* No. 11 Civ. 4326 (S.D.N.Y.);

*Ayala v. GEICO*, No. 18 Civ. 03583 (S.D.N.Y.);

*Beckman v. KeyBank, N.A.*, No. 12 Civ. 7836 (S.D.N.Y.);

*Blum, et al. v. Merrill Lynch & Co., Inc.*, No. 15 Civ. 1636 (S.D.N.Y.);

*Calabresi v. TD Bank, N.A.,* No. 13 Civ. 0637 (E.D.N.Y.);

*Capalupi v. People's United Financial, Inc.*, No. 15 Civ. 5247 (E.D.N.Y.);

*Clem v. KeyBank, N.A.*, No. 13 Civ. 789 (S.D.N.Y.);

*Heitzenrater v. OfficeMax, Inc.*, No. 12 Civ. 900S (W.D.N.Y.);

*Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472 (S.D.N.Y.);

*Hirst, et al. v. M&T Bank, et al.*, No. 511428/2015 (N.Y. Sup. Ct.);

*Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-cv-10219 (D. Mass.);

*Krokos v. Fresh Market, Inc.*, No. 16-cv-12082 (D. Mass.);

*Kulauzovic v. Citibank, N.A.*, No. 507538/2018 (N.Y. Sup. Ct.);

*Palacio v. E*TRADE Fin. Corp.*, No. 10 Civ. 4030 (S.D.N.Y);

*Puglisi v. TD Bank, N.A.,* No. 13 Civ. 637 (E.D.N.Y.);

*Reiburn v. Merrill Lynch & Co., Inc.*, No. 15 Civ. 2960 (S.D.N.Y.);

*Robbins v. Abercrombie & Fitch Co.*, No. 15 Civ. 6187 (W.D.N.Y.);

*Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (S.D.N.Y.);

*Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531 (S.D.N.Y.);

*Besic v. Byline Bank, Inc., et al.*, No. 15 C 8003 (N.D. Ill.);

*Biscoe-Grey v. Sears Holding Corp.*, No. 09-81408-Civ-Marra / Johnson (S.D. Fla.);

*Briggs v. PNC Fin. Servs. Gr.*, No. 15 Civ. 10447 (N.D. Ill.);

*Ciomcia v. Beall's Inc.*, Case No. 2:17-cv-14444 (S.D. Fla.);

*Cerrone v. KB Home Florida, LLC et al.*, No. 07-14402-Civ (S.D. Fla.);

*Danley v. Office Depot, Inc., et al.*, No. 9:14-cv-81469 (S.D. Fla.);

*DeVries v. Morgan Stanley & Co. LLC*, No. 12-CV-81223 (S.D. Fla.);

*Fiore v. Goodyear Tire & Rubber Co.*, No. 2:09-CV-843-FtM-29SPC (M.D. Fla.);

*Hosier v. Mattress Firm, Inc.*, No. 10 Civ. 294 (M.D. Fla.);

*Kampfer v. Fifth Third Bank*, No. 14-cv-02849 (N.D. Ohio);

*Koszyk v. Country Fin.*, No. 16 Civ. 3571 (N.D. Ill.);

*Magee v. Francesca's Holdings Corp.*, No. 1:17-cv-00565 (D.N.J.);

*McCue v. MB Fin., Inc.*, No. 15 Civ. 988 (N.D. Ill.);

*Nash v. CVS Caremark Corp.*, No. 09 Civ. 79 (D.R.I.);

*Prena v. BMO Financial Corp., et al.*, No. 1:14-cv-09175 (N.D. Ill.);

*Przytula v. Bed Bath & Beyond, Inc.*, No. 17 Civ. 5124 (N.D. Ill.);

*Raley v. Kohl's Corporation, et al.*, No. 8:09-cv-2340 (M.D. Fla.);

*Roberts v. TJX Cos.*, No. 13 Civ. 13142 (D. Mass.);

*Romero v. Florida Power & Light Company*, No. 6:09-cv-1401-Orl-35 (M.D. Fla.);

*Saliford v. Regions Financial Corp. et al.*, No. 10-610310-CIV (S.D. Fla.);

*Simpkins v. Pulte Home Corp.*, No. 6:08-cv-00130 (M.D. Fla.);

*Snodgrass v. Bob Evans Farms, Inc.*, No. 12-cv-768 (S.D. Ohio);

*Stallard v. Fifth Third Bank, et al,* No. 2:12-cv-01092 (W.D. Pa.);

*Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230 (N.D. Ill.);

*Waggoner v. U.S. Bancorp,* No. 14-cv-1626 (N.D. Ohio);

*Watson v. BMO Financial Corp.,* No. 15-cv-11881 (E.D. Ill.);

*Wright v. Flagstar Bank FSB,* No. 13 Civ. 15069 (E.D. Mich.).

28. SLG has litigated and settled approximately 50 manager misclassification cases in recent years and can fairly assess the risks and value of the claims in this case as compared to other similar cases which the firm has settled.

**REQUESTED ATTORNEY'S FEE AND PLAINTIFFS' COUNSEL'S TIME AND EXPENSES SPENT ON THIS LITIGATION**

29. Plaintiffs' Counsel is requesting $900,000.00 for attorneys' fees and costs. This amount was separately negotiated following resolution of the amount to be paid to the Plaintiffs.

30. As detailed in the prior section, SLG and my co-counsel firms have significant experience prosecuting large-scale wage and hour class and collective actions such as this one. Our collective experience played a large role in securing the excellent result in this case and weighs in favor of granting the requested fees.

31. The chart below contains a breakdown of hours worked by each timekeeper including their hourly rates:

| Attorney/Years Of Experience | Rate | Hours Worked After Billing Judgment | Total Lodestar |
| --- | --- | --- | --- |
| Sam Smith, Partner, 31 years of experience | $600 | 147 | $88.620 |
| Gregg Shavitz, Partner, 26 years of experience | $600 | 117.2 | $70,320 |
| Brendan Donelon, Partner, 25 years of experience | $600 | 72.1 | $43,260 |

12

| | | | |
|---|---|---|---|
| Hillary Schwab, Partner, 21 years of experience | $600 | 44.3 | $26,580 |
| Loren Donnell, Partner, 14 years of experience | $500 | 291.3 | $145,668.47 |
| Steven Churchill, Partner 27 years of experience | $600 | 3.4 | $2,040 |
| Michael Palitz, Partner, 10 years of experience | $600 | 914.8 | $457,400 |
| Christine Duignan, Of Counsel, 29 years of experience | $500 | 38.1 | $20,955 |
| Alan Quiles, Associate, 25 years of experience | $550 | 45.3 | $24,915 |
| Tamra Givens, Associate, 16 years of experience | $500 | 747.5 | $373,750 |
| Rachel Smit, Associate, 7 years of experience | $400 | 74.3 | $29,700 |
| Paralegals | $150 | 360.5 | $54,075 |

32.     Plaintiffs' requested hourly rates are reasonable and reflect their substantial experience handling these types of complex cases. This Declaration and the Declaration of Sam J. Smith sets forth the substantial experience of SLG and SLG's co-counsel, including Burr & Smith, LLP, who has been appointed as class counsel in over 50 class actions, Fair Work, PC, a preeminent class action firm in Massachusetts, whose recent litigation victories on behalf of workers includes *New Prime Inc. v. Oliveira*, 586 U.S. __, 139 S. Ct. 532 (2019), and the Law Office of Donelon, PC, who recently successfully tried a collective action manager misclassification cases to a jury verdict. In April 2019, District Judge Gardephe held that the hourly rates for Attorneys Palitz and Shavitz are reasonable in *Varghese v. J.P. Morgan Chase*,

No. 14-cv-01718 (S.D.N.Y.). Exhibit C at 21:2-5 ("The hourly rates of the partners who perform the majority of the partner level work, Mr. Stoecker, Mr. Shavitz, and Mr. Palitz, are $700, $650, and $500 an hour, respectively. I find these billing rates to be reasonable.").

33.     Because of the substantial effort expended by Plaintiffs' Counsel, the prosecution of this action proceeded in an efficient manner. Work was handled primarily by those attorneys involved in the case who had the greatest experience in the relevant area of the law or of the case. Where necessary and cost effective, paralegals were used. Assignments, whether related to discovery or briefing, were given to those lawyers known to have abilities and expertise in those areas or, as the case progressed, by those attorneys with the greatest experience in that aspect of the litigation. As such, the expenditure of more than 3,000 hours for all of the work on this case to date was reasonable and necessary to secure the results which were achieved.

34.     The requested attorneys' fees are not based solely on the time and effort already expended; they are also meant to compensate Plaintiffs' Counsel for the time they will be required to spend administering the settlement in the future. In our experience, administering settlements of this nature and size requires a substantial and ongoing commitment. Plaintiffs' Counsel expects to respond to many inquiries after final approval, especially after checks are issued and even extending until the 2021 tax season when Plaintiffs will seek advice regarding the tax consequences of the payments made under the settlement

35.     As part of the $900,000.00, Plaintiffs' Counsel is also seeking reimbursement of its out-of-pocket expenses. To date, Plaintiffs spent $93,945.62 litigating these matters. *See* Smith Decl. ¶ 10. These costs were incidental and necessary to the prosecution of this lawsuit and include, among other things, court fees, transcript fees, transportation and travel expenses, administrator's cost for the conditional certification notice work, and the mediator's fees.

36. Plaintiffs' Counsel paid for all of these costs out-of-pocket and has not been reimbursed for any costs to date. If this litigation was not successful and no settlement was obtained, Plaintiffs' Counsel would have not have been able to recover any of the costs it expended on behalf of the Plaintiffs.

37. Plaintiffs' Counsel has represented the Plaintiffs on a contingency basis with no guarantee of payment (in whole or part). Since 2015, Plaintiffs' Counsel has litigated all of these matters to date without payment of any legal fees and paid all costs and expenses on behalf of its clients and the Plaintiffs. Plaintiffs' Counsel undertook this matter on a contingency basis in the face of significant risk. Collective action wage and hour cases of this type are, by their very nature, complicated, fact intensive, and time-consuming. Any lawyer undertaking representation of large numbers of affected employees in wage and hour actions must be prepared to make a tremendous investment of time, energy, and financial resources, particularly in a case like this one against a large employer with nearly unlimited resources to litigate these claims. Plaintiffs' Counsel undertook this matter prepared to make this investment with the possibility of an unsuccessful outcome and no fee of any kind. Plaintiffs' Counsel stood to gain nothing in the event the case was unsuccessful. Plaintiffs' Counsel knew in advance that there was a significant chance that Plaintiffs' Counsel would recover nothing, even though Plaintiffs' Counsel believed this was a meritorious case. Plaintiffs' Counsel nevertheless took on this case in the hopes that it could achieve the result that it has achieved through this settlement. Moreover, taking on this case meant that Plaintiffs' Counsel could not take on certain other matters because of the time and resources Plaintiffs' Counsel would need to spend to litigate these claims properly. Thus, the Court should take into account the lost opportunity cost in making its decision on attorneys' fees.

38. Plaintiffs' Counsel takes on difficult cases like this one because we believe that they are important to protect workers' rights and ensure fairness in the workplace. Plaintiffs' Counsel takes our responsibility seriously to advocate for workers and provide a voice where there is none. The average employee does not have the resources to litigate against its employer. Even if the employee knows they were victims of an unlawful policy, that employee cannot obtain relief because the cost to litigate typically exceeds the value of their claims. In these situations, Plaintiffs' Counsel steps in and represents workers on a contingency basis to ensure that their rights are protected and that they have an opportunity to seek relief.

39. Plaintiffs' Counsel brings many cases against well-funded employers on behalf of employees who claim to be misclassified as exempt or not paid for all of their hours worked. We continue to do so despite, unfortunately, having suffered some very expensive losses over the years. For example, in *Adiyeh v. Gregg Appliances, Inc*., No. 16 Civ. 2340 (S.D. Ind.), SLG brought a collective action misclassification claim on behalf of Sales Managers. After a year of hard-fought litigation, the defendant filed for bankruptcy. The defendant in *Ivery v. RMH Franchise Corp*., No. 17 Civ. 1619 (N.D. Ill.) also filed for bankruptcy after SLG litigated the case for more than a year. Moreover, FLSA collective actions face the risk of decertification which extends the litigation and results in individuals electing not to proceed with their claims outside of the collective action. While SLG has had success defeating decertification motions, we have lost others which have resulted in appeals and many cases filed in multiple districts throughout the country. *Scott v. Chipotle Mexican Grill, Inc.*, No. 12 Civ. 8333 (S.D.N.Y.); *McEarchen v. Urban Outfitters, Inc*., No. 13 Civ. 3569 (E.D.N.Y.). As these examples show, contingency litigation is risky. While this case represents a successful result, not all cases end so positively given the risks of wage and hour class and collective action litigation. Plaintiffs' Counsel also compromised the

value of their services (our combined Lodestar exceeds $1.4 million dollars) to settle these attorney fee and cost claims for $900,000.00.

40. The work performed by Plaintiffs' Counsel in attaining this settlement should also be evaluated in light of the quality of opposing counsel. Defendants were represented by Seyfarth Shaw LLP – a global law firm with more than 900 lawyers. Seyfarth's employment defense practice group is consistently ranked as one of the best in America. Notwithstanding the high quality defense counsel representing Defendants, a substantial settlement was achieved.

**EFFORTS OF PLAINTIFFS AND OTHER SERVICE AWARD RECIPIENTS**

41. The Settlement Agreement provides for service awards totaling $2,000.00 each ($18,000.00 total), to be distributed among the service award recipients Dianne Bucceri, Janet Charak, Lisa Sanders, Robert Herrick, Michael Jalbert, Stephanie Burdick, Chad Lacasse, Anthony Marquette, and Gregory Mitchell.

42. The service award Plaintiffs have made important contributions to the prosecution and fair resolution of this action on behalf of all Plaintiffs.

43. The service award Plaintiffs assisted Plaintiffs' Counsel's investigation and prosecution of the claims by providing detailed factual information and documents regarding the nature of their duties and responsibilities, hours worked, Defendants' operations and practices impacting their duties, Defendants' compensation practices and overtime policies, and other information relevant to the class and merits issues in this case. In addition to producing documents and responding to discovery requests, many service award Plaintiffs spent hours preparing for their depositions and faced intense and detailed questioning from Defendants' counsel. Some service award Plaintiffs also prepared for trial.

44. Throughout the investigation, litigation, and settlement negotiations, service award Plaintiffs regularly made themselves available to provide information and respond to questions from counsel.

45. Service award Plaintiffs risked retaliation. Some work for Defendant still and others risked being "blacklisted" in the industry generally.

46. The service awards acknowledge the effort and sacrifice of these Plaintiffs who sought redress for alleged overtime damages, not only for themselves, but for others impacted by these alleged violations.

**EXHIBITS**

47. Attached as Exhibit A is the parties fully executed Settlement Agreement.

48. Attached as Exhibit B is a copy of a transcript of a final approval hearing before Judge Gardephe in *Varghese v. J.P. Morgan Chase*, No. 14-cv-01718 (S.D.N.Y.).

49. Attached as Exhibit C is a Proposed Order approving the Settlement.

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.


Dated: April 13, 2020                    /s/ Michael Palitz
       New York, New York                Michael Palitz

## **CERTIFICATE OF SERVICE**

      I hereby certify that on April 13, 2020 this document was filed through the Court's ECF system and that Defendant's counsel includes registered users designated to receive Notices of Electronic Filings in this matter.

                                            /s/ Loren B. Donnell
                                            Loren B. Donnell